<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ERIC S. WEISS,<br><br>               Plaintiff,<br><br>    v.<br><br>HUNTERDON COUNTY PROSECUTOR'S OFFICE *et al.*,<br><br>               Defendants. | Civil Action No. 25-09981 (GC) (TJB)<br><br><u>**OPINION**</u> |

<u>**CASTNER, District Judge**</u>

      **THIS MATTER** comes before the Court upon Defendants Hunterdon County Prosecutor's Office, Renee M. Robeson, Frank R. Crisologo, Kelsey Marsh and Colin Frinzi's (the HCPO Defendants) Motion to Dismiss.[1]  (ECF No. 12.)  Plaintiff Eric S. Weiss opposed, and the HCPO Defendants replied.  (ECF Nos. 13, 14.)  The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, the HCPO Defendants' Motion is **GRANTED**.

---

[1]      The Township Defendants do not join this Motion.

## I.      BACKGROUND

### A.      Factual Background[2]

On January 10, 2023 at approximately 1:00 p.m., Plaintiff was in Clinton Township, New Jersey, for his work as a realtor. (ECF No. 3 ¶¶ 11, 12.)[3] There, Plaintiff encountered his estranged son. (*See id.* ¶ 12.)[4] While Plaintiff was speaking with his son, his son "pocket dialed" Plaintiff's ex-wife and the mother of Plaintiff's son, who called the Clinton Township Police Department and reported domestic violence. (*See id.* ¶¶ 12, 14-15.)[5] The Police Department responded, and officers were at the scene with Plaintiff for approximately one hour. (*Id.* ¶¶ 16, 28, 31.) Plaintiff alleges the officers "held [him] against his will." (*Id.* ¶ 31.) The officers ran Plaintiff's driver's license and issued him a citation for an expired registration. (*Id.* ¶ 28.) The officers then allowed Plaintiff to leave. (*Id.* ¶ 32.)

---

[2] On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

Because the HCPO Defendants have moved, in the alternative, for summary judgment on Plaintiff's state law tort claims, they have also submitted a "Statement of Undisputed Material Facts" (ECF No. 12-5) as required by Rule 56. In opposing the HCPO Defendants' Motion, Plaintiff filed a "Response and Counter Statement of Facts." (ECF No. 13-1.) However, because the Court need not reach the HCPO Defendants' alternative Motion for Summary Judgment as discussed herein, the Court will not consider these statements. *See Wagner on behalf of B.D. v. City of Newark*, Civ. No. 23-731, 2024 WL 2698588, at *4 (D.N.J. May 24, 2024) ("The Third Circuit, however, has made clear that in deciding a [Rule 12(b)(6)] motion to dismiss, 'a court must consider only the complaint' and 'exhibits attached to the complaint.'") (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

[3] In the First Amended Complaint (FAC), Plaintiff labels two different sets of paragraphs 4 through 13. (*See* ECF No. 3 at 2-4.) This citation refers to the second paragraphs labeled 11 and 12.

[4] This citation refers to the second paragraph labeled 12.

[5] This citation refers to the second paragraph labeled 12.

Plaintiff alleges that at 3:00 p.m. that same day, Defendants—Plaintiff does not indicate which Defendants—called Plaintiff's son to "pressure him into filing a restraining order" against Plaintiff. (*Id.* ¶ 33.) Plaintiff alleges that a restraining order was filed but not adjudicated for three months. (*See id.* ¶¶ 36-37.) Plaintiff asserts that Defendants "refused to provide" Plaintiff with "copies of the police report and any other evidence" he requested so that he could defend himself against the restraining order, but Defendants provided Plaintiff's ex-wife with the documents she requested. (*Id.* ¶¶ 42-45.) Plaintiff states that the restraining order was denied on March 16, 2023. (*Id.* ¶ 38.)

On April 10, 2023, Plaintiff filed a "notice of tort claim[s]" with "Clinton Township/Police Department." (*Id.* ¶ 46.) Plaintiff alleges that Defendants retaliated against Plaintiff by refusing to bring charges against Plaintiff's ex-wife for her alleged role in the January 10 incident, and "did not inform Plaintiff that he had the right to file the charges after they refused to take the police report/complaint." (*Id.* ¶¶ 47-51.) On that same day, Plaintiff also informed the Clinton Township Police Department that he wanted to file an internal affairs complaint against the officers who were involved in the January 10 incident. (*See id.* ¶ 55.) Plaintiff alleges he never received a response to this request. (*Id.*) Plaintiff reached out again and informed the Police Department that he would also like to file an internal affairs complaint against the officers who failed to investigate his complaint. (*Id.* ¶ 56.) Plaintiff claims he also did not receive a response to his second request. (*Id.*) He alleges that he first received a response to his attempts to file complaints in August 2023, when a Clinton Township Police Officer told Plaintiff that he would investigate Plaintiff's complaints. (*Id.* ¶ 57.) Plaintiff alleges that he never heard back from that officer, and in November or December 2023 Plaintiff contacted the Police Department again to inform them that no one had responded to his complaints. (*Id.* ¶ 58.)

3

In January 2024, the officer who responded to Plaintiff in August 2023 reached back out to Plaintiff and indicated that he would investigate Plaintiff's complaints, at which time Plaintiff indicated that he wanted to add that officer to his complaints. (*Id.* ¶ 59.) The officer informed Plaintiff he could not take the complaints "falsely alleging it was due to a lawsuit pending by Plaintiff that Plaintiff never filed." (*Id.* ¶ 60.) At that point, Plaintiff asked to transfer his internal affairs complaints to the Hunterdon County Prosecutor's Office (HCPO). (*Id.* ¶¶ 61-63.) Plaintiff met with HCPO Detective Sergeant Marsh and HCPO Detective Frinzi regarding his complaints. (*Id.* ¶ 65.) Plaintiff was dissatisfied by this meeting and alleges that Marsh and Frinzi would not "provide [Plaintiff] any discovery to help [him] file [his] complaint against these officers," and Marsh refused to take Plaintiff's complaint. (*Id.* ¶ 69; *see also id.* ¶¶ 67-72.) Plaintiff complained about Marsh and Frinzi to HCPO Prosecutor Robeson, who transferred this dispute to the Office of Public Integrity and Accountability (OPIA) within the New Jersey Attorney General's Office. (*See id.* ¶¶ 73-75.) The OPIA ultimately instructed HCPO to handle Plaintiff's internal affairs complaints, which at this point involved complaints against the responding/investigating police officers on January 10, 2023 as well as the HCPO officers who initially handled Plaintiff's complaints regarding the January 10 incident. (*See id.* ¶ 78.)

In July 2024, Plaintiff met with HCPO Captain Crisologo, who conducted an interview regarding Plaintiff's complaints. (*Id.* ¶ 80.) Plaintiff followed up with Crisologo in August 2024 with more information. (*Id.* ¶ 81.) Plaintiff alleges that at the time he filed this lawsuit, his complaints had not been investigated in violation of the rules. (*Id.* ¶ 82.)

### B.    Procedural Background

Plaintiff originally filed suit in the Superior Court of New Jersey, Hunterdon County, on January 3, 2025. (*See* ECF No. 1-2.) He brought fourteen claims, seemingly based in tort law,

4

although Plaintiff did not cite the sources of law for any of his counts. (*Id.* at 14.)[6] Plaintiff sued two groups of Defendants: the HCPO Defendants as well as the Township of Clinton Police Department and affiliated individuals (Township Defendants). (ECF No. 1 ¶ 1.) After the HCPO Defendants filed a Motion for Summary Judgment And/Or Motion to Dismiss in State court, Plaintiff opposed the Motion and in that opposition indicated that some of his claims were grounded in the First and Fourteenth Amendments and brought under 42 U.S.C. § 1983. (*Id.* ¶¶ 4-8.) As such, on June 11, 2025, the HCPO Defendants removed the action to this Court.[7] (*See id.* ¶¶ 11-12.)

On July 1, 2025, Plaintiff filed a Proposed Amended Complaint (FAC), which the Court accepted as the operative pleading in this matter. (ECF Nos. 3, 5.) In the FAC, Plaintiff asserts twenty-five causes of action. His federal causes of action include: violation of Fourth Amendment rights (Count One); violation of Fourteenth Amendment due process rights (Count Two); denial of his constitutional right of access to the courts (Plaintiff labels this count as "Count 2B"); conspiracy to obstruct justice under 42 U.S.C. § 1985 (Plaintiff labels this count as "Count 2C"); violation of First Amendment rights (Count Three); municipal liability under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978) (Count Four); conspiracy to violate civil rights under 42 U.S.C. § 1985, including conspiracy to obstruct justice and intimidate witnesses under the Equal Protection Clause (Count Five) and conspiracy to obstruct Plaintiff's right of access to the courts (Plaintiff labels this count as "Count 5B"); failure to intervene and supervisory liability under  42 U.S.C. § 1983 and the New Jersey Civil Rights Acts (NJCRA) (Count Six); and

---

[6]     Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[7]     This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

"violation of equal protection" under the Fourteenth Amendment (Count Seven).  (ECF No. 3 ¶¶ 131-211.)   His state law causes of action include: "Malicious Prosecution, Malicious Use of Process, and Malicious Abuse of Process" (Count Eight); deprivation of rights under the NJCRA (Counts Nine and "Count 9B"); intentional infliction of emotional distress (Count Ten); negligent infliction of emotional distress (Count Eleven); false imprisonment (Count Twelve); civil conspiracy (Count Thirteen); negligence or gross negligence (Count Fourteen); invasion of privacy (Count Fifteen); common law fraud (Count Sixteen); conspiracy to commit fraud (Count Seventeen); tortious interference with a contractual relationship (Count Eighteen); aiding the commission of a tort (Count Nineteen); "Breach of Duty - Ministerial Negligence / Nonfeasance" (Count Twenty); and "Deprivation and Interference with Protected Parental Rights" (Count Twenty-One).  (*Id.* ¶¶ 212-335.)  Plaintiff seeks "compensatory damages, consequential damages, punitive damages, actual damages, costs, interest, awarding reasonable attorneys fees and costs and expense of litigation[.]"  (*Id.* at 76.)

On September 5, 2025, the HCPO Defendants moved to dismiss the FAC or, in the alternative, for summary judgment.  (ECF No. 12.)  The HCPO Defendants move to dismiss Plaintiff's state law tort claims for lack of subject matter jurisdiction under Rule 12(b)(1) or alternatively, for summary judgment on those claims under Rule 56.  (ECF No. 12-1 at 16.)  The HCPO Defendants move to dismiss Plaintiff's remaining claims for failure to state a claim under Rule 12(b)(6).  (*Id.*)

## II.    <u>LEGAL STANDARD</u>[8]

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether

---

[8]    In addition to dismissal for failure to state a claim pursuant to Rule 12(b)(6), the HCPO Defendants have also moved for dismissal of Plaintiff's state law tort claims for lack of subject

the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dirs. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (internal quotations omitted) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231-32 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

"The obligation to liberally construe a *pro se* litigant's pleadings is well-established." *Higgs v. Att'y Gen. of the United States*, 655 F.3d 333, 339 (3d. Cir 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Courts are to construe complaints so 'as to do substantial justice,' . . . keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citing Fed. R. Civ. P. 8(f)). "Liberal construction does not, however, require the Court to credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). "[P]ro se litigants still must allege sufficient

---

matter jurisdiction pursuant to Rule 12(b)(1), and in the alternative for summary judgment pursuant to Rule 56. (*See* ECF No. 12-1 at 12-13.) Because, as discussed herein, the Court does not reach these claims, it does not discuss these additional legal standards.

facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "Even a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282 (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## III.    DISCUSSION

### A.    Plaintiff's Federal Law Claims Against the HCPO Defendants

The Court will begin by addressing Plaintiff's federal claims.  Plaintiff brings claims under 42 U.S.C. § 1983 alleging violations of his constitutional rights under the First Amendment (Counts Two[9] and Three) (ECF No. 3 ¶¶ 142-149 (Count Two); *id.* ¶¶ 165-168 (Count Three)), Fourteenth Amendment (Count Two (due process) (*id.* ¶¶ 142-149), Count Seven (equal protection) (*id.* ¶¶ 198-211)), and his right of access to the courts[10] ("Count 2B") (*id.* ¶¶ 150-154). Plaintiff also brings a claim for "failure to intervene" under § 1983 (Count Six).  (*Id.* ¶¶ 185-197.) Plaintiff alleges "municipal liability," explaining that Defendants are liable for violations of his constitutional rights through the maintenance of "policies or customs of inadequate training and supervision" under *Monell*[11] (Count Four).  (*Id.* ¶¶ 169-172.)  Plaintiff also asserts claims for

---

[9]    While Count Two is titled "Violation of Fourteenth Amendment Due Process," Plaintiff alleges in this Count that "Plaintiff had a clearly established right under the First and Fourteenth Amendments to petition the government and to have law enforcement investigate claims of criminal conduct."  (ECF No. 3 ¶ 142; *see also id.* ¶ 146.)

[10]    "The right of access to the courts is a fundamental right which has three constitutional underpinnings.  The first is the privileges and immunities clauses of Article 4 and the Fourteenth Amendment of the Constitution.  The second is the right to petition [the Court] for redress of grievances found in the First Amendment, and the third is the Due Process Clause." *Agresta v. City of Philadelphia*, 801 F. Supp. 1464, 1472 (E.D. Pa. 1992), *aff'd sub nom. Agresta v. Sambor*, 993 F.2d 223 (3d Cir. 1993) (internal citations omitted).

[11]    *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978).

conspiracy under 42 U.S.C. § 1985 for "conspiracy to obstruct justice" in violation of the Fourteenth Amendment's Due Process Clause ("Count 2C") (*id.* ¶¶ 155-164); "conspiracy to violate civil rights" in violation of the Fourteenth Amendment's Equal Protection Clause (Count Five) (*id.* ¶¶ 173-179); and "conspiracy to obstruct justice and intimidate witnesses" in violation of Plaintiff's right of access to the courts ("Count 5B") (*see id.* ¶¶ 180-184).

Liberally construing the pleadings, *see Higgs*, 655 F.3d at 339, Plaintiff appears to assert these federal claims against the HCPO Defendants in their official and personal capacities for failure to investigate Plaintiff's internal affairs complaints. (*See id.* ¶ 46 ("On April 10, 2023, Plaintiff filed a notice of tort claim with Clinton Township/Police Department. So Plaintiff's suit and claims against Defendant(s) are both in their official and personal capacity."); *id.* ¶ 6 (stating that Marsh, Robeson, Crisologo and Frinzi were "acting under color of law"); *id.* ¶ 8 ("Defendant Kelsey Marsh is also named in her individual capacity").)[12]

### 1.    *Official Capacity Claims*

The HCPO Defendants argue that Plaintiff's § 1983 and § 1985 claims brought against them in their official capacities must be dismissed as they are not "persons" amenable to suit.[13] (ECF No. 12-1 at 34-39.) The Court agrees.

---

[12]    These citations refer to the second instance of paragraphs labeled 6 and 8.

[13]    Generally, "the Eleventh Amendment precludes federal suits against New Jersey county prosecutors, as well as their offices, arising out of their law enforcement functions on the basis that the real party in interest in these suits is the State of New Jersey." *Adams v. City of Atl. City*, Civ. No. 13-7133, 2014 WL 2094090, at *9 (D.N.J. May 20, 2014) (internal quotations omitted) (quoting *Duncan v. Off. of Passaic Cnty. Prosecutor,* Civ. No. 05-1931, 2012 WL 1079471, at *2 (D.N.J. Mar. 30, 2012)). However, because the HCPO Defendants have availed themselves of this Court's jurisdiction by removing this action from state court, Eleventh Amendment immunity does not apply here. *Vance v. New Jersey Div. of L. & Pub. Safety*, Civ. No. 12-4006, 2017 WL 3895553, at *3 n.4 (D.N.J. Sept. 5, 2017) ("These [state] defendants have waived their Eleventh Amendment federal-forum immunity by removing the action to federal court. That bar to subject-matter jurisdiction is therefore unavailable."), (ECF No. 14 at 14 ("[T]he HCPO Defendants are

Section 1983 imposes liability on "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]"  42 U.S.C. § 1983 (emphasis added). Defendants deemed *not* to be "persons" are immune from suit.  *Sussino v. New Jersey Div. of State Police*, Civ. No. 09-6278, 2012 WL 5184582, at *6 (D.N.J. Oct. 18, 2012) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66 (1989)).  "Persons" has the same meaning under § 1983 and § 1985.[14] *See New Jersey Chinese Cmty. Ctr. v. McAleer*, Civ. No. 21-08320, 2022 WL 3403297, at *7 (D.N.J. Aug. 15, 2022) (collecting cases).

"Individuals that are 'arms of the [S]tate' for Eleventh Amendment purposes are not considered 'persons' amenable to suit under § 1983."[15] *Mattiaccio v. Scharfenberg*, Civ. No. 23-23037, 2025 WL 1879226, a *8 (D.N.J. July 8, 2025) (citing *Will*, 491 U.S. at 71).  "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will*, 491 U.S. at 71.  Thus, "[w]hen a county prosecutor's office and county prosecutors 'engage in classic law

---

not presently asserting Eleventh Amendment sovereign immunity from suit because they have availed themselves of this Court's jurisdiction[.]").)

[14]     Section 1985 provides a mechanism to impose liability on conspirators when "two or more persons" conspire to (1) prevent an officer from performing his or her duties, (2) obstruct justice or intimidate witnesses or jurors, or (3) deprive a person of their rights or privileges.  42 U.S.C. § 1985.

[15]     However, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"  *Will*, 491 U.S. at 71 (quoting *Kentucky v. Graham,* 473 U.S., 159, 167, n.14 (1985)).  That exception is not applicable here as Plaintiff does not seek injunctive relief.  (ECF No. 3 at 76 ("Plaintiff demands judgment against Defendants for compensatory damages, consequential damages, punitive damages, actual damages, costs, interest, awarding reasonable attorneys fees and costs and expense of litigation, and other such relief as this Court deems just and proper.").)

10

enforcement and investigative functions, they act as officers of the State' and are not amenable to suit." *Ianuale v. New Jersey*, Civ. No. 18-03069, 2024 WL 4856206, at *8 (D.N.J. Nov. 20, 2024) (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996)). Actions such as "[c]harging, indicting, and deciding what evidence to present in these documents are all typically essential prosecutorial functions." *Sexton v. New Jersey Dep't of Corr.*, Civ. No. 21-20404, 2023 WL 8868810, at *7 (D.N.J. Dec. 22, 2023). Conversely, a prosecutor's office is not acting as an "arm of the State" when "perform[ing] administrative tasks unrelated to their strictly prosecutorial functions, such as . . . personnel decisions." *Hyatt v. Cnty. of Passaic*, 340 F. App'x 833, 836 (3d Cir. 2009) (quoting *Coleman,* 87 F.3d at 1499). However, "[t]raining and policy decisions that require legal knowledge and discretion are related to prosecutorial functions and are unlike administrative tasks concerning personnel." *Id.* at 836-37.

The HCPO Defendants argue they are not amenable to suit under § 1983 and § 1985 because an investigation of internal affairs complaints is a law enforcement activity conducted on behalf of the State. (ECF No. 12-1 at 36.) Plaintiff argues that the HCPO Defendants were not acting as an "arm of the State" because their actions were administrative, and as such they are county actors subject to § 1983 and § 1985 liability.[16] (ECF No. 13 at 26-29.)

---

[16] The Court notes that in this section and throughout his briefing, Plaintiff cites to several cases that do not stand for the proposition asserted. Should Plaintiff continue to mischaracterize legal authorities, this may result in sanctions including dismissal. *See, e.g., Gokay v. Pennridge Sch. Dist.*, Civ. No. 02-8482, 2003 WL 21250656, at *3 n.3 (E.D. Pa. Feb. 28, 2003) ("The defendants are warned in the strongest terms that any further mischaracterization of precedential authority will be met with sanctions."); *Ewideh v. Homesite Ins. Co. of the Midwest*, Civ. No. 23-2590, 2024 WL 247056, at *3 (E.D. Pa. Jan. 23, 2024) ("The plaintiffs are warned that they are 'not protected from Rule 11 sanctions merely by [their] *pro se* status and that such sanctions may include monetary penalties, dismissal of [their] action, with prejudice, and vexatious filing injunctions to deter further repeated frivolous filings.'") (alterations in original) (quoting *Daniel v. Goodyear Tire/Cbsd*, No. 15-11479, 2016 WL 4607739, at *6 (E.D. Mich. Aug. 8, 2016)).

To determine whether the HCPO Defendants are acting as an arm of the State, the Court applies the three-factor test established in *Fitchik v. N.J. Transit Rail Operations, Inc.,* 873 F.2d 655, 659 (3d Cir. 1989). *Adams v. City of Atl. City*, Civ. No. 13-7133, 2014 WL 2094090, at *10 (D.N.J. May 20, 2014). Although *Fitchik* considered whether the defendant was an "arm of the State" for Eleventh Amendment immunity purposes, these factors have also been applied to determine whether an entity is a "person" under § 1983. *Id.*; *see also Rivera v. New Jersey Transit*, Civ. No. 16-05308, 2017 WL 1347684, at *5 (D.N.J. Apr. 7, 2017). The *Fitchik* factors include "(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy[.]" *Adams*, 2014 WL 2094090, at *10 (citation omitted). Plaintiff argues that when overseeing an internal affairs complaint, HCPO Defendants are not acting as an arm of the State because (1) any judgment would be paid by the county, (2) county prosecutors are treated as county officials when performing non-prosecutorial functions, and (3) "the HCPO exercises significant local autonomy in handling internal affairs transfers under AG Guidelines, without direct state oversight." (ECF No. 13 at 28.) Plaintiff contends that "no prosecution was involved; the HCPO was administratively reviewing police misconduct." (*Id.* at 29.)

Courts in this district have held that the investigation of internal affairs complaints falls under prosecutorial, as opposed to administrative, functions. *See, e.g.*, *Adams*, 2014 WL 2094090, at *5 (holding that county prosecutor's office's alleged policy and practice of failing to investigate internal affairs complaints, "relates to the 'law enforcement/investigatory' duties of the [prosecutor's office]" and "does not relate to the kinds of administrative duties at the prosecutor's office for which counties may be held liable"); *Murphy v. Middlesex County.*, Civ. No. 15-7102, 2017 WL 6342154, at *7 (D.N.J. Dec. 12, 2017) (holding that county prosecutor's office was not

12

a "person" subject to § 1983 liability because "the Court is persuaded that the offending conduct, *i.e.*, the failure to follow [an attorney general directive regarding internal affairs investigations], is related to a prosecutor's classic law enforcement and/or investigative functions and is unlike the type of personnel and staffing decisions that are characterized as local matters").  Plaintiff cites to no relevant case law in support of his argument that the HCPO Defendants' actions were administrative or ministerial in nature.  *See Hoffman v. Warren Cnty. Prosecutor's Off.*, Civ. No. 23-00561, 2023 WL 8271806, at *5-6 (D.N.J. Nov. 30, 2023) (holding that prosecutor's office was acting as an arm of the State where "[the plaintiff] writes that the Complaint 'shows that [a prosecutor] was not engaged in classic law enforcement and investigative functions,' but cites no particularized factual allegation or case law to support such a conclusion").

The remaining *Fitchik* factors further indicate that the HCPO Defendants were acting as an arm of the State.  (ECF No. 14 at 14-15.)  Payment of any judgment would come from the state treasury, because "when county prosecutors and their subordinates perform law enforcement and prosecutorial functions, 'they act as agents of the State,' and the State must indemnify a judgment arising from their conduct."  *Hyatt*, 340 F. App'x at 836 (quoting *Wright v. State,* 778 A.2d 443, 461-62, 464 (N.J. 2001)).  As for the HCPO Defendants' autonomy, "the county prosecutor's office is a constitutionally established office and is under the supervision of the New Jersey Attorney General, and not the county." *Kamienski v. Att'y Gen. for New Jersey*, Civ. No. 11-3056, 2012 WL 4033765, at *4 (D.N.J. Sept. 12, 2012) (citing *Wright,* 778 A.2d at 452); *see also Adams*, 2014 WL 2094090, at *5 ("The state, via the Attorney General, is responsible for the law enforcement policies at the [county prosecutor's office], and therefore, the County is not a proper defendant to claims related to policies concerning the investigation of citizen complaints.").  Because the HCPO

13

Defendants were acting as an arm of the State, they are not persons amenable to suit under § 1983 and § 1985.

Plaintiff also alleges that the HCPO Defendants "maintained policies or customs of inadequate training and supervision, leading to the violations described" to establish liability under *Monell*. (ECF No. 3 ¶¶ 169, 171.) Plaintiff alleges these policies or customs included "refusing to accept or investigate internal affairs complaints," which led to the constitutional violations alleged in this action. (*Id.* ¶ 171.) However, "*Monell* liability only attaches to local governments, and does not attach to the State or its agencies." *Ianuale v. New Jersey*, Civ. No. 18-03069, 2025 WL 2124568, at *5 (D.N.J. July 29, 2025) (quoting *Carbonaro v. Glassboro Police Dep't*, Civ. No. 22-00617, 2023 WL 2784386, at *6 (D.N.J. Apr. 5, 2023)). Because the HCPO Defendants acted as an "arm of the State" and not as a local entity when investigating the internal affairs complaints, *Monell* liability cannot be asserted against them. *See Carbonaro*, 2023 WL 2784386, at *6 ("Because we have determined that the [p]rosecutor [d]efendants are an arm of the State . . . Plaintiffs could not assert a *Monell* claim against them.").

Given that the HCPO Defendants are not "persons" amenable to suit under § 1983 and § 1985, the HCPO Defendants' Motion to Dismiss the FAC as to Counts Two, 2B, 2C, Three, Five, 5B, and Seven against the HCPO Defendants in their official capacities is granted. These claims are dismissed with prejudice. *See, e.g.*, *Murphy*, 2017 WL 6342154, at *7-8 (dismissing with prejudice claims against the county prosecutor's office in its official capacity after finding it was not a "person" under § 1983); *Pritchett v. Camden Cnty. Corr. Facility*, Civ. No. 16-08241, 2018 WL 1522713, at *2 (D.N.J. Mar. 28, 2018) ("The [defendant], however, is not a 'person' within the meaning of § 1983; therefore, the claims against it must be dismissed with prejudice."); *Pallipurath v. New Jersey Dep't of Corr.*, Civ. No. 21-4567, 2023 WL 4864298, at *4 (D.N.J. July

14

31, 2023) ("As these defendants are not 'persons' within the meaning of Section 1983, the Court will dismiss these claims with prejudice for failure to state a claim for relief.").

### 2.      *Individual Capacity Claims*

Plaintiff also asserts his federal claims against the HCPO Defendants in their individual capacities.[17]  (*See* ECF No. 3 ¶¶ 6, 8, 46.)[18]  The HCPO Defendants argue these claims must be dismissed because they are entitled to qualified immunity.  (ECF No. 12-1 at 39-45.)  Specifically, they argue that there is no constitutional right to an internal affairs investigation.  (*Id.* at 43.)  The HCPO Defendants contend that Plaintiff's reliance on a New Jersey Attorney General directive to create this right is misplaced.  (*Id.* at 43-44.)  Plaintiff responds that he is asserting rights established by the First and Fourteenth Amendments and "reasonable officials know that investigative or administrative misconduct, such as failing to act on mandatory internal affairs probes, is not shielded . . . . the HCPO Defendants' deliberate indifference to AG Guidelines and hostile refusal to provide evidence mirrors conduct Third Circuit courts have deemed violative of clearly established law."  (ECF No. 13 at 30-31 (citations omitted).)

"Qualified immunity shields government officials from liability for civil damages so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Karkalas v. Marks*, 845 F. App'x 114, 117 (3d Cir. 2021) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "At the motion-to-dismiss stage, courts evaluate qualified immunity for a constitutional claim by examining (i) whether the complaint

---

[17]      "While state officials sued in their official capacity are also not 'persons' subject to a suit for damages under § 1983, a state official sued in his individual capacity is a 'person' subject to suit under § 1983." *Bonner v. New Jersey*, Civ. No. 10-2684, 2012 WL 254138, at *2 n.4 (D.N.J. Jan. 27, 2012) (citing *Kentucky v. Graham,* 473 U.S. 159, 167-68 (1985)).

[18]      These citations refer to the second instance of paragraphs labeled 6 and 8.

contains plausible allegations of a constitutional violation and (ii) whether the asserted constitutional right is clearly established." *Id.* at 118. The questions may be answered in either order. *Pearson v. Callahan*, 555 U.S. 223, 240-42 (2009). Qualified immunity aims to resolve "insubstantial claims" against government officials prior to discovery. *See Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987) (quoting *Harlow*, 457 U.S. at 818-19). "[T]he burden is on the defendants to establish they are entitled to qualified immunity." *E. D. v. Sharkey*, 928 F.3d 299, 306 (3d Cir. 2019)); *see also Scotti v. Univ. Corr. Health Care*, No. 19-13981, 2022 WL 4217766, at *11 (D.N.J. Sept. 13, 2022) (stating that qualified immunity is an affirmative defense and the burden of pleading rests with the defendant) (citing *Gomez v. Toledo*, 446 U.S. 635, 639 (1980)).

The HCPO Defendants seek to have all of Plaintiff's civil rights claims dismissed due to qualified immunity. (*See* ECF No. 12-1 at 39.) The crux of Plaintiff's federal claims is that the HCPO Defendants violated Plaintiff's First and Fourteenth Amendment rights and deprived Plaintiff of access to the courts by failing to investigate Plaintiff's complaints regarding the Clinton Township Police Department and refusing to provide Plaintiff with evidence and investigative materials related to Plaintiff's request for an investigation.[19] (*See* ECF No. 3 ¶¶ 142-211.) The HCPO Defendants are entitled to qualified immunity as to Counts Two, 2B, 2C, Four, Five, 5B, Six, and Seven brought against them in their individual capacities because Plaintiff does not assert that the HCPO Defendants violated Plaintiff's "clearly established rights."[20]

---

[19]   To the extent that Plaintiff intends to allege the HCPO Defendants violated his constitutional rights by declining to bring criminal charges (*see* ECF No. 3 ¶¶ 143-144, 163, 167, 174, 181, 207), the HCPO Defendants are entitled to prosecutorial immunity. The decision to charge a suspect is one of the primary tasks of a prosecutor, and "[p]rosecutors have absolute immunity from suit under § 1983 when carrying out prosecutorial functions." *Hyatt*, 340 F. App'x at 837.

[20]   In Counts 2C and Six, Plaintiff also brings claims against the HCPO Defendants in their individual capacities as supervisors, alleging their knowledge of unconstitutional conduct and failure to act also constituted a violation of constitutional duties. (ECF No. 3 ¶¶ 161, 185-197.)

"'A Government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right.'" *Mirabella v. Villard*, 853 F.3d 641, 648 (3d Cir. 2017) (alterations in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011))  Plaintiff has failed to demonstrate that a reasonable official in the HCPO Defendants' position would have understood that his or her alleged actions violated Plaintiff's First and Fourteenth Amendment rights, and Plaintiff has not pointed this Court to any binding precedent showing that his asserted rights were clearly established at the time.  *Bonasorte v. City of Pittsburgh*, Civ. No. 18-0243, 2019 WL 1593720, at *4 (W.D. Pa. Apr. 15, 2019).  First, while "substantive due process protects many fundamental rights, 'there is no constitutional right to the investigation of another.'"  *Batista v. City of Perth Amboy*, Civ. No. 15-2833, 2020 WL 1329980, at *9 (D.N.J. Mar. 23, 2020) (quoting *Lee v. City of Philadelphia*, 627 F. App'x 175, 177 (3d Cir. 2015); *see also, e.g.*, *Barnes v. Mercer Cnty. Corr. Ctr.*, Civ. No. 06-5704, 2009 WL 1025562, at *7 (D.N.J. Apr. 16, 2009) ("[The p]laintiff has no constitutional right to have officials investigate or respond to administrative grievances."); *Doe v. Williamsport Area Sch. Dist.*, 699 F. Supp. 3d

---

Defendants are entitled to qualified immunity for these claims as well because Plaintiff does not allege that the supervisors' conduct violated any clearly established right.  Regardless, Plaintiff has also failed to state a claim for supervisory liability.  To state such a claim under § 1983, "a plaintiff must demonstrate that the officials were personally involved in the commission of the conduct alleged."  *Snatchko v. Peters Twp.*, Civ. No. 12-1179, 2012 WL 6761369, at *11 (W.D. Pa. Dec. 28, 2012) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)).  Plaintiff fails to plausibly allege the HCPO Defendant's personal involvement beyond allegations that supervisors knew of the alleged conduct but failed to act and conclusory allegations regarding a "policy of discouraging or obstructing citizen oversight and redress mechanisms."  (ECF No. 3 ¶ 171; *see also id.* ¶¶ 161, 185-197.) *Szemple v. Rutgers*, Civ. No. 10-05445, 2016 WL 1228842, at *5 (D.N.J. Mar. 29, 2016) (courts "reject[] the contention that supervisor liability can be imposed where the official had only 'knowledge' or 'acquiesced' in their subordinates['] conduct"); *Zigler v. Warren*, Civ. No. 21-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("[The p]laintiff's supervisory liability claim is a bare conclusion, which is insufficient to state a claim for relief.").

17

306, 323 (M.D. Pa. 2023) (holding the Fourteenth Amendment Equal Protection Clause "provides no constitutional right to police protection or investigation"); *Sanders v. Downs*, 420 F. App'x 175, 180 (3d Cir. 2011) ("[T]here is no constitutional right to the investigation or prosecution of another."). Nor is there a constitutional right to access an investigative file.[21]  *See, e.g.*, *United States v. Moleski*, Crim. No. 12-811, 2014 WL 197907, at *9 n.4 (D.N.J. Jan. 13, 2014) (holding in the criminal context that a "defendant is not entitled to discovery of everything that a government investigation reveals"); *Winslow v. The Borough of Malvern PA*, Civ. No. 08-1890, 2009 WL 4609590, at *7 (E.D. Pa. Dec. 7, 2009) ("This [c]ourt is aware of no cases establishing a constitutional right to obtain a police report."); *Del. Coal. for Open Gov't v. Strine*, 894 F. Supp. 2d 493, 499 (D. Del. 2012) ("[T]here is no right of access to the records and decisions of the Pennsylvania body charged with investigating complaints against judicial officers. . . . For the same reason, there is no right to access an administrative agency's records, including internal memoranda analyzing the results of the department's investigations.), *aff'd sub nom. Del. Coal. for Open Gov't, Inc. v. Strine*, 733 F.3d 510 (3d Cir. 2013).

Plaintiff also cites the "Attorney General Guidelines" requiring referral and investigation of internal affairs complaints to support his argument that the HCPO Defendants violated his constitutional rights.[22]  (*See, e.g.*, ECF No. 3 ¶¶ 115-116, 125, 163, 171, 203-204; ECF No. 13 at

---

[21]   Plaintiff also cites to the New Jersey Open Public Records Act (OPRA), N.J. Stat. Ann. §§ 47:1A-1.1 *et seq.*, in support of his claim that denying him access to evidence and investigative materials violated his rights.  (ECF No. 3 ¶ 121; *see also id.* ¶ 106).  However, OPRA does not create a constitutional right to access materials from an internal affairs investigation.  *See Slaughter v. Perry*, Civ. No. 12-2577, 2012 WL 4891698, at *3 (D.N.J. Oct. 12, 2012) (dismissing the complaint because "[defendant's] actions to deny [p]laintiff's OPRA request cannot be shown to have violated any constitutional standards."); *Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir. 1990) ("[A] state statute cannot, in and of itself, create a constitutional right.").

[22]   While the HCPO Defendants assert Plaintiff is relying on Attorney General Law Enforcement Directive No. 2022-14, *Transparency in Internal Affairs Investigations* (Nov. 15, 2022),   https://www.nj.gov/oag/dcj/agguide/directives/ag-Directive-2022-14_Transparency-in-

21, 25, 28, 29, 31.)  First, it is unclear which section of the Guidelines Plaintiff intends to reference.

Plaintiff often cites to "§ 5.6," which he contends requires the police department to forward

Plaintiff's internal affairs complaints to the county prosecutor.  (*See* ECF No. 3 ¶ 125; ECF No. 13

at 28, 29.)  There is no § 5.6, although § 5.0.1 states that "[e]very law enforcement agency shall

establish a policy providing that any complaint from a member of the public is readily accepted

and fully and promptly investigated," *Internal Affairs Policy & Procedures* § 5.0.1, and § 5.1.8

provides that complaints against law enforcement executives or senior management team should

be referred to the county prosecutor, *Internal Affairs Policy & Procedures* § 5.1.8.  Regardless, the

Court agrees with the HCPO Defendants that the Attorney General Guidelines cannot establish a

constitutional right where one does not exist.  (*See* ECF No. 12-1 at 43-45.)  *See, e.g.*, *Davis v.*

*Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their

qualified immunity merely because their conduct violates some statutory or administrative

provision."); *Hartman v. Bachert*, 880 F. Supp. 342, 354 (E.D. Pa. 1995) ("It is a 'well-accepted

principle' that 'duties under state law cannot create constitutional obligations.'") (quoting *Fagan*

*v. City of Vineland*, 22 F.3d 1296, 1308 (3d Cir. 1994)).

The HCPO Defendants are also entitled to qualified immunity as to Count Three because

the asserted right is not clearly established.  Count Three alleges retaliation in violation of the First

Amendment.  The Third Circuit has explained that it is too broad to define rights in this context as

"the 'right to be free from retaliation for one's speech.'"  *Mirabella*, 853 F.3d at 653.  Instead, the

"clearly established right" must be defined in the context of the defendant's retaliatory act.  *See id.*

---

Internal-Affairs-Investigations.pdf (ECF No. 12-1 at 43-45; ECF No. 14 at 12-13), Plaintiff never
cites this Directive.  The Court understands Plaintiff to be generally referencing the N.J. Office of
the Attorney General's published guidelines for internal affairs complaints.  *See* N.J. Office of the
Attorney General, *Internal Affairs Policy & Procedures* (Nov. 2022),
https://www.nj.gov/oag/iapp/docs/IAPP_November-2022.pdf.

(quoting *Reichle v. Howards*, 566 U.S. 658, 665 (2012)).  In the present case, the right Plaintiff alleges was violated is the right to be free from a retaliatory refusal to investigate complaints or disclose evidence when the plaintiff has complained about law enforcement officers.  (*See* ECF No. 3 ¶¶ 158-160, 167, 182-183.)  Again, Plaintiff does not identify "Supreme Court precedent nor a 'robust consensus of cases of persuasive authority'" establishing this right, *Mirabella*, 853 F.3d at 653 (quoting *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016), *as amended* (Mar. 21, 2016)), but instead only provides cases generally stating the First Amendment's prohibition on retaliation or the elements required to assert a First Amendment retaliation claim.  (ECF No. 13 at 30-32.)  *See, e.g.*, *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out[.]"); *Thomas v. Indep. Twp.*, 463 F.3d 285, 296, 299 (3d Cir. 2006) (finding that the plaintiff "adequately pled First Amendment retaliation claims" but remanding "with instructions to order plaintiffs to file a more definite statement under Rule 12(e) so that the [defendant] may reassert, and the [d]istrict [c]ourt may reconsider, the qualified immunity issue in light of the factual context of this case"); *Anderson v. Davila*, 125 F.3d 148, 161 n.13, 163 (3d Cir. 1997) (finding plaintiff stated a claim for retaliation under the First Amendment but not considering qualified immunity).  Therefore, the HCPO Defendants are also entitled to qualified immunity as to Count Three.

Because the HCPO Defendants are entitled to qualified immunity as to Counts Two, 2B, 2C, Three, Four, Five, 5B, Six, and Seven brought against them in their individual capacities, these claims must be dismissed with prejudice.  *See, e.g.*, *O'Bryant v. New Jersey Div. of Child Prot. & Permanency*, Civ. No. 17-07752, 2021 WL 9275294, at *7 (D.N.J. Feb. 22, 2021) ("The state

20

defendants are entitled to qualified immunity and [the p]laintiffs' claims against them must be dismissed with prejudice.").

### B.      Plaintiff's State Law Claims

Having dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See Obuskovic v. Wood*, 761 F. App'x 144, 148-49 (3d Cir. 2019) (the court "has discretion to 'decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction'") (quoting 28 U.S.C. § 1367(c)(3)). Additionally, "'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state law claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Francisco v. New Jersey Dep't of Correction*, Civ. No. 23-22775, 2024 WL 4117394, at *2 (D.N.J. Sept. 9, 2024) (emphasis in original) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)). The Court finds no extraordinary circumstances exist to warrant an exercise of supplemental jurisdiction over Plaintiff's remaining state law claims. Plaintiff's state law claims are hereby dismissed, without prejudice.

### IV.      CONCLUSION

For the foregoing reasons, and other good cause shown, the HCPO Defendants' Motion to Dismiss (ECF No. 12) is **GRANTED**. An appropriate Order follows.

Dated: March 30, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

21